# RETAIL INSTALLMENT CONTRACT and SECURITY AGREEMENT
## A CONSUMER CREDIT DOCUMENT



**BUYER(S)** NAME: Elizabeth Calhoun
NAME: Isabell Daily   DATE: 3/9/01
ADDRESS: 207 1st Avenue
CITY/STATE/ZIP: Sardis, AL 36775   COUNTY: DALLAS
**SELLER:** Cahaba Housing Center, 3113 US Hwy 80 West Selma AL 36701-2411
**ASSIGNEE:** Dynex Financial of Alabama, Inc., 2763 Meadow Church Road Suite 200 Duluth GA 30097   ACCOUNT NUMBER

| ANNUAL PERCENTAGE RATE (The cost of my credit as a yearly rate.) | FINANCE CHARGE (The dollar amount the credit will cost me.) | Amount Financed (The amount of credit provided to me or on my behalf) | Total of Payments (The amount I will have paid after I have made all payments as scheduled.) | Total Sale Price (The total cost of my purchase on credit, including my down payment of $4,271.50 |
|---|---|---|---|---|
| 12.79% | $111,655.00 | $38,195.00 | $149,850.00 | $154,121.50 |

| My payment schedule will be. Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 1 to 360 | $416.25 | Monthly, beginning: 4/15/01 |

**SECURITY:** I am giving you a security interest in.
X The manufactured home being purchased.  ___ Real property located at ___
**FILING FEES:** $15.00   **LATE CHARGE:** If a payment is more than 15 days late, I will be charged $5.00 or 5.00% of the payment, whichever is less
**PREPAYMENT:** If I pay off early, I will not be charged a prepayment penalty.
**ASSUMPTION:** Someone buying the manufactured home may, subject to conditions, be allowed to assume the remainder of this contract on the original terms.
See the contract document below for any additional information about nonpayment, default, any required repayment in full before this scheduled date, and prepayment refunds and penalties
**ADJUSTABLE RATE:** N/A This transaction is subject to an adjustable rate feature  Adjustable rate disclosures have been provided at an earlier time.

### ITEMIZATION OF THE AMOUNT FINANCED

| | | |
|---|---|---|
| 1 Cash Sale Price (including Taxes of) $922.50 | | $41,922.50 |
| 2 Gross Trade-in | $0.00 | |
| Less Amount Owed on Trade-in | $0.00 | |
| Net trade-in | $0.00 | |
| Description  Make ___ | | |
| Year ___ Size ___ x ___ | | |
| 3 Cash Down Payment | $4,271.50 | |
| 4 Total Down Payment | − | $4,271.50 |
| 5 Unpaid Balance of Cash Sale Price (1-4) | = | $37,651.00 |
| 6 Paid to Public Officials | + | $15.00 |
| 7 Paid to Insurance Companies | + | $529.00 |
| 8 Paid to Appraiser | + | $0.00 |
| 9 a Paid to ___ | + | $0.00 |
| b Paid to ___ | + | $0.00 |
| c Paid to ___ | + | $0.00 |
| d Paid to ___ | + | $0.00 |
| 10 Amount Financed (5+6+7+8+9 a through d) | = | $38,195.00 |
| 11 Prepaid finance charges | | $1,527.80 |
| 12 Prepaid finance charges financed | + | $1,527.80 |
| 13 Loan Amount (10+12) | = | $39,722.80 |

### PHYSICAL DAMAGE INSURANCE

Adequate Physical Damage Insurance on the manufactured home is required for the term of this contract. I may obtain such insurance from any source I choose that is acceptable to you.
By my indication below, I elect to purchase the insurance from you or through you for the term and premium specified:

| Type of Insurance | Term | Premium |
|---|---|---|
| N/A Broad Form Comp | 0 years | $0.00 |
| X Mobile Home | 1 years | $529.00 |
| N/A | 0 years | $0.00 |

### OPTIONAL CREDIT LIFE INSURANCE

Credit Life Insurance is not required to obtain credit and will not be provided unless I sign and agree to pay the additional cost
The term of this insurance is ___ 0 years

| | | |
|---|---|---|
| N/A Single Credit Life Insurance | | $0.00 |
| N/A Joint Credit Life Insurance | | $0.00 |
| | Total | $0.00 |

X N/A
Signature of Buyer Insured   Date
X N/A
Signature of Buyer Insured   Date

ALABAMA    EC  ID   Page 1 of 6
Original Contract/Note  20785418  Calhoun  (Initial)  (Initial)

MAR-09-2001 14:35   DYNEX   97%   P.12

| CONTRACT AND SECURITY AGREEMENT |
|---|

1. **DEFINITIONS:** "I", "me", "my" means the Buyer(s) jointly and severally. "You", "your" means the Seller and also the Assignee (after the Contract is assigned by Seller). "Manufactured Home" means the manufactured home and any other property described below. "Contract" means this Retail Installment Contract and Security Agreement.

| NEW OR USED | Manufactured Home ||||
|---|---|---|---|---|
| | YEAR AND MAKE | MODEL | SERIAL NUMBER | SIZE |
| N | 2001 / Home of Legend | Legend V | HL12847AL | 80 x 16 |
| Together with the following appliances and equipment included therein: Air Conditioning, Skirting, Steps ||||| 

2. **PURCHASE:** I understand that I may purchase the Manufactured Home for the cash price, or by buying on credit. The cash price is shown on page 1 as the "Cash Sale Price", and the credit price is shown on page 1 as the "Total Sale Price". I choose to buy on credit.

3. **PROMISE TO PAY:** I promise to pay you the Loan Amount shown on Page 1 of this Contract (Line 13), with interest on the unpaid balance thereof until paid, at the initial rate of ___12.25%___ per annum, in installments as shown in the payment schedule on Page 1. Each payment made will be applied first to interest owed as of the date that payment is due and the remainder to the unpaid balance of the Loan Amount. The Finance Charge, Total of Payments and monthly payments disclosed on Page 1 of this Contract were computed based on the assumption that you will receive my payments on their due dates. My interest rate may change beginning on the date which is ___0___ months after my first payment due date, as specified on page 1 of this Contract, and every 6 months thereafter.

4. **SECURITY INTEREST:** The Seller retains a Security Interest in the subject matter of this agreement. I grant you a security interest under the applicable certificate of title laws, and/or Uniform Commercial Code in, (1) the Manufactured Home and in all goods that are or may hereafter be added to it by me or by operation of law become accessions to it (excluding any accessions consisting of household goods to the extent not acquired with the proceeds of this transaction), (2) insurance proceeds, sums due from a third party who has damaged or destroyed the Manufactured Home or from their insurer, whether due to judgment, settlement or other process, any refunds of unearned insurance premiums financed in this Contract and, (3) all proceeds of such Manufactured Home and accessions, all appliances, machinery, equipment and other goods furnished with the Manufactured Home (whether or not installed or affixed to it) including but not limited to the items listed as "any other property described below" on Page 2 of this agreement, acquired with the proceeds of this transaction. This security interest secures payment and performance of my obligations under this Contract, including any additional debt arising because of my failure to perform my obligations under this Contract, and includes any contractual extensions, renewals or modifications. If this Contract is secured by a mortgage, deed of trust, or security deed on my real estate, then this security agreement is not exclusive. Your rights and remedies under this Contract and any mortgage, deed of trust, or security deed executed herewith are cumulative, but my right to a Notice of Default (as provided in this Contract) shall not be affected by any inconsistent provision of any mortgage, deed of trust, or security deed. I agree to execute any application for certificate of title or ownership, financing statement or other document necessary to perfect your security interest in the Manufactured Home.

5. **PREPAYMENT:** I HAVE THE RIGHT TO PREPAY ALL OR PART OF THIS LOAN AT ANY TIME WITHOUT PENALTY, BUT I WILL NOT BE ENTITLED TO A REFUND OF THE PREPAID FINANCE CHARGE, IF ANY.

6. **PROPERTY INSURANCE:** I am required to insure the Manufactured Home against physical damage for the term of this Contract at my expense. The minimum coverage will be Broad Form Comprehensive in an amount equal to the lesser of the actual cash value of the Manufactured Home or the remaining unpaid balance I owe from time to time on this Contract. The insurance policy will contain a loss payable clause protecting you (as your interest may appear), and provide for 10 day notice of cancellation to you. I HAVE THE RIGHT TO CHOOSE THE PERSON THROUGH WHOM THE PROPERTY INSURANCE POLICY IS OBTAINED. If my insurance coverage expires or is canceled prior to payment in full of this Contract, I must obtain no less than the minimum coverage at my expense for the remaining term of this Contract. Should I fail to maintain the minimum coverage, you may, but are not obligated to, obtain the minimum coverage. If you do so, you will notify me of the fact and that the cost, plus interest at the contract rate, will be added to my debt. I will repay such amount during the term of the policy in the manner requested by you.

**LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED BY OR TO OTHERS IS NOT INCLUDED.**

_E C_ (Initial)  _I D_ (Initial)   Page 2 of 6

7. LATE CHARGE: I agree to pay a late charge for late payment as set forth on the front of this Contract. Only one late charge will be made on any delinquent installment regardless of the period for which that installment remains in default. After this Contract matures, whether by acceleration or otherwise, I will not be charged a late charge. For the purposes of assessing late charges, payments received will be deemed to apply first to current installments.

8. DISHONORED CHECK CHARGE: If a check, draft, or similar instrument I give you for payment on my account is not paid or is dishonored by my financial institution, I will pay you a bad check charge of twenty-five dollars ($25.00) or five percent (5%) of the face amount of the check or other instrument dishonored, whichever is greater, or the maximum amount allowed by law, if less.

9. NO WARRANTIES: I AGREE THAT THERE ARE NO WARRANTIES OF ANY TYPE COVERING THE MANUFACTURED HOME. I AM BUYING THE MANUFACTURED HOME AS IS AND WITH ALL FAULTS AND THE ENTIRE RISK AS TO THE QUALITY AND PERFORMANCE OF THE MANUFACTURED HOME IS WITH ME. I AGREE THAT ANY IMPLIED WARRANTY OF MERCHANTABILITY AND ANY IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE ARE SPECIFICALLY EXCLUDED AND DO NOT COVER THE MANUFACTURED HOME. THIS NO WARRANTIES PROVISION DOES NOT APPLY TO THE EXTENT THAT ANY LAW PROHIBITS IT AND IT DOES NOT COVER ANY SEPARATE WRITTEN WARRANTIES.

10. PROTECTION OF THE MANUFACTURED HOME: I will: (a) keep the Manufactured Home in good condition and not commit waste; (b) pay all taxes, charges and lot rent due for the Manufactured Home and the real estate it is located on; (c) not move, use illegally, sell, lease or otherwise transfer the Manufactured Home; (d) not attach the Manufactured Home to any real estate and the Manufactured Home will always be treated as personal property unless you consent in writing and state law permits such contrary treatment; and (e) not let anybody else have any interest in the Manufactured Home.

11. EVENTS OF DEFAULT: I will be in default under this Contract (each a "Default") if: (a) I fail to make any payment when due; (b) I fail to timely make rental payments, or to pay other charges and assessments, relating to the real property and/or facility on which the Manufactured Home is located; (c) I violate rules or regulations relating to the facility where the Manufactured Home is located; (d) I fail to keep the Manufactured Home in good repair and condition, as you may reasonably determine; (e) I remove the Manufactured Home from the address shown on this Contract unless I notify you in advance and receive your written consent; (f) I sell or attempt to sell the Manufactured Home without first obtaining your written consent; (g) I allow the Manufactured Home, if it is personal property, to become part of any real estate; (h) I encumber or abandon the Manufactured Home or use it for hire or illegally; (i) I fail to promptly pay any taxes and other liens and encumbrances on the Manufactured Home; and/or (j) I fail to do anything else which I have promised to do under this Contract.

12. NOTICE OF DEFAULT: If any of the above specified Events of Default have occurred, you may do whatever is necessary to correct my Default. You will, except as set forth below, first give me a written Notice of Default before you accelerate payment of the remaining unpaid balance I owe you or repossess or foreclose on any property which secures this Contract. The notice will tell me what my Default is and how I can cure it (the "Notice of Default"). You are not required to send me the Notice of Default when (1) you have already sent a Notice of Default twice within the preceding one-year period, (2) I have abandoned or voluntarily surrendered the Manufactured Home, or (3) other extreme circumstances exist. You will also comply with other applicable laws, if any, granting me specific rights if an Event of Default occurs. To the extent permitted by applicable law, I waive presentment, demand for payment, protest, notice of dishonor and notice of acceleration.

_EC_ (Initial)    _ID_ (Initial)    Page 3 of 6

13. REMEDIES UPON DEFAULT: If I do not cure the default, you may do either or both of the following at the end of the applicable notice period: (a) you can require me to immediately pay you the entire remaining unpaid balance of the Contract plus accrued interest, or, (b) you can repossess the Manufactured Home. If you are not required to send me the Notice of Default, you will have these rights immediately upon my default, subject to any applicable specific laws. Once you get possession of the Manufactured Home, you may sell it in such manner as you deem fit, provided you comply with all applicable laws, if any, granting me specific rights regarding the procedure for such sale. If the amount from the sale, after expenses, is less than what I owe you, I will pay you the difference except as otherwise provided by law.

14. ATTORNEY FEES: If you hire an attorney who is not your salaried employee to collect what I owe under this Contract or to get possession of the Manufactured Home, I will pay your reasonable attorney's fees, not to exceed any maximum amount permitted by applicable law.

15. OTHER TERMS AND CONDITIONS: I agree: (a) to pay with my monthly installments, if requested by you to do so, the estimated amount necessary to pay yearly taxes, assessments and insurance premiums that will become due within the next twelve month period; (b) to pay you a transfer fee if I sell the Manufactured Home, unless such fee is prohibited by law; (c) to pay interest at the rate provided for in this Contract on the remaining unpaid balance plus accrued interest, from the date of maturity until paid in full; (d) to reimburse you immediately upon demand, with interest at the rate provided for in this Contract, the amount of funds you actually advance on my behalf to correct my default; and (e) that if I am married, and residing in a community property state, both my community property and separate property will be liable for all payments due under this Contract.

16. CREDIT INFORMATION: You may investigate my credit history and credit capacity in connection with opening and collecting my account and share information about me and my account with credit reporting agencies. You may sell or otherwise furnish information about me, including insurance information, to all others to whom you may lawfully provide such information. You may furnish specific information about the Manufactured Home and any insurance policies on the Manufactured Home to any insurance agent to enable such agent to quote premiums to me and solicit my insurance business.

17. ASSIGNMENT: You may assign this Contract to any person or entity. All rights granted to you under this Contract shall apply to any assignee of this Contract.

18. WAIVER: Waiver of any default shall not constitute a waiver of any other default. No term of this Contract shall be changed unless in writing and signed by one of your officers. This Contract, and any mortgage, deed of trust, or security deed executed by me in connection with this Contract is the entire agreement between us and I agree that no oral or implied representations have been made to induce me to enter into this Contract.

19. OBLIGATIONS OF PERSONS UNDER THIS CONTRACT: If more than one person signs this Contract, each person is fully and personally obligated to keep all of the promises made in this Contract, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Contract is also obligated to do these things. Any person who takes over these obligations is also obligated to keep all of the promises made in this Contract. The Holder of this Contract may enforce its rights under this Contract against each person individually or against everyone. This means that any obligor may be required to pay all of the amount owed under this Contract.

20. VALIDITY: Wherever possible, each provision of this Contract shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Contract shall be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Contract. This Contract shall be of no effect until and unless signed by me and accepted by you. In no event shall any charge under this Contract exceed the highest amount allowed by applicable law. If any excess charge is received, such excess shall be refunded or applied to the amount due.

21. GOVERNING LAW: Each provision of this Contract shall be construed in accordance with and governed by the laws of the state where the Manufactured Home is located, provided that to the extent you have greater rights or remedies under Federal law, such choice of state law shall not be deemed to deprive you of such greater rights and remedies under Federal law.

22. POWER OF ATTORNEY: I give you and any corporate officer designated by you power of attorney, which cannot be canceled, to sign any documents reasonably necessary to register or perfect your interest in the Manufactured Home, or to insure, protect, sell or otherwise deal with the Manufactured Home in the event of my default. However, this power of attorney shall not allow you to confess judgment against me.

23. MISCELLANEOUS: Your failure to file your security interest, failure to keep insured the Manufactured Home, release of your lien or granting extensions of time payment shall not affect my obligation to make any payments or keep any other promise under this Contract.

_E.C._ _T.D._  Page 4 of 6
(Initial)  (Initial)

24. ARBITRATION. ALL DISPUTES, CLAIMS OR CONTROVERSIES ARISING FROM OR RELATING TO THIS CONTRACT OR THE PARTIES THERETO SHALL BE RESOLVED BY BINDING ARBITRATION BY ONE ARBITRATOR SELECTED BY YOU WITH MY CONSENT. THIS AGREEMENT IS MADE PURSUANT TO A TRANSACTION IN INTERSTATE COMMERCE AND SHALL BE GOVERNED BY THE FEDERAL ARBITRATION ACT AT 9 U.S.C. SECTION 1. JUDGMENT UPON THE AWARD RENDERED MAY BE ENTERED IN ANY COURT HAVING JURISDICTION. THE PARTIES AGREE AND UNDERSTAND THAT THEY CHOOSE ARBITRATION INSTEAD OF LITIGATION TO RESOLVE DISPUTES. THE PARTIES UNDERSTAND THAT THEY HAVE A RIGHT TO LITIGATE DISPUTES IN COURT, BUT THAT THEY PREFER TO RESOLVE THEIR DISPUTES THROUGH ARBITRATION, EXCEPT AS PROVIDED HEREIN, THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL EITHER PURSUANT TO ARBITRATION UNDER THIS CLAUSE OR PURSUANT TO A COURT ACTION BY YOU (AS PROVIDED HEREIN). THE PARTIES AGREE AND UNDERSTAND THAT ALL DISPUTES ARISING UNDER CASE LAW, STATUTORY LAW AND ALL OTHER LAWS INCLUDING, BUT NOT LIMITED TO, ALL CONTRACT, TORT AND PROPERTY DISPUTES WILL BE SUBJECT TO BINDING ARBITRATION IN ACCORD WITH THIS CONTRACT. THE PARTIES AGREE THAT THE ARBITRATOR SHALL HAVE ALL POWERS PROVIDED BY LAW, THE CONTRACT AND THE AGREEMENT OF THE PARTIES. THESE POWERS SHALL INCLUDE ALL LEGAL AND EQUITABLE REMEDIES INCLUDING, BUT NOT LIMITED TO, MONEY DAMAGES, DECLARATORY RELIEF AND INJUNCTIVE RELIEF, NOTWITHSTANDING ANYTHING HEREUNTO THE CONTRARY, YOU RETAIN AN OPTION TO USE JUDICIAL (FILING A LAWSUIT) OR NON-JUDICIAL RELIEF TO ENFORCE A SECURITY AGREEMENT RELATING TO THE MANUFACTURED HOME. THE INSTITUTION AND MAINTENANCE OF A LAWSUIT TO FORECLOSE UPON ANY COLLATERAL, TO OBTAIN A MONETARY JUDGMENT OR TO ENFORCE THE SECURITY AGREEMENT SHALL NOT CONSTITUTE A WAIVER OF THE RIGHT OF ANY PARTY TO COMPEL ARBITRATION REGARDING ANY OTHER DISPUTE OR REMEDY SUBJECT TO ARBITRATION IN THIS CONTRACT, INCLUDING THE FILING OF A COUNTERCLAIM IN A SUIT BROUGHT BY YOU PURSUANT TO THIS PROVISION.

26. WAIVER OF JURY TRIAL. I HEREBY WAIVE ANY RIGHT TO A TRIAL BY JURY THAT I HAVE IN ANY SUBSEQUENT LITIGATION BETWEEN ME AND THE SELLER, OR ME AND ANY ASSIGNEE OF THE SELLER, WHERE SUCH LITIGATION ARISES OUT OF, IS RELATED TO, OR IS IN CONNECTION WITH ANY PROVISION OF THIS CONTRACT WHETHER THE CONTRACT IS ASSERTED AS THE BASIS FOR A CLAIM, COUNTERCLAIM OR CROSSCLAIM, OR A DEFENSE TO A CLAIM, COUNTERCLAIM OR CROSSCLAIM.

**NOTICE**
ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

MY SIGNATURE BELOW ACKNOWLEDGES I UNDERSTAND PARAGRAPHS 24 AND 26 ABOVE REQUIRING BINDING ARBITRATION AND WAIVE MY RIGHT TO A JURY TRIAL IF A DISPUTE ARISES UNDER THIS CONTRACT.

YOU HAVE THE OPTION TO PROVIDE SUCH PHYSICAL DAMAGE INSURANCE AS IS REQUIRED, IN CONNECTION WITH THIS PURCHASE, EITHER THROUGH AN EXISTING POLICY OR BY A POLICY INDEPENDENTLY OBTAINED BY YOU.

BUYER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS CONTRACT.

CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

X _Elizabeth Calhoun_
Signature of Buyer - Elizabeth Calhoun

X _Isabell Daily_
Signature of Buyer - Isabell Daily

Social Security Number

Social Security Number

## ASSIGNMENT BY SELLER

For value received, Seller hereby sells, assigns and transfers its entire right, title and interest in the foregoing Retail Installment Contract ("Contract") and the manufactured home described therein (the "Home") to Assignee. To induce Assignee to purchase the Contract, Seller warrants that: (a) the Contract is genuine, legally valid and enforceable and arose from the sale of the Home; (b) the Contract is subject to no defense, counterclaim or set off; (c) copies of the Contract and all other documents signed by the Buyer(s) were given to the Buyer prior to consummation; (d) Seller has complied with all applicable federal, state and local laws, regulations, rules and ordinances; (e) the Buyer is not a minor and has legal capacity to execute this Contract; (f) the Home is free and clear of all liens and encumbrances except the security interest granted herein and Seller has the right to assign its interest in the Contract; (g) the security interest granted to Seller constitutes a valid first lien on the Home and seller has the right to assign this Contract and thereby to convey good title to it; (h) the down payment shown on the face hereof was made by Buyer in cash unless otherwise specified and no part thereof was loaned directly or indirectly by the Seller to Buyer; (i) all statements of fact made in the Contract and all statements made by or on behalf of the Buyer in the credit applications and any other forms relating to the Contract are true to the best of Seller's knowledge and belief; (j) Buyer has physical damage insurance in the amount of the indebtedness; (k) there have been no material changes in the Buyers' income, indebtedness or employment and no other material changes between loan approval and funding; (l) any trade-in received as any part of the down payment is accurately described and has been valued at its bona fide value and has been paid off by Seller prior to or contemporaneously with the assignment of this Contract; (m) there is now owing on this Contract the amount set forth herein; (n) in accordance with the Fair Credit Reporting Act, Seller has notified Buyer that the Contract is to be submitted to Assignee; (o) in the event of any claim, defense or counterclaim asserted by any Buyer, or any heirs or assigns of Buyer, with respect to the Home, Seller agrees that it will indemnify and hold assignee harmless from all such claims and defenses as well as from all costs reasonably incurred by Assignee in connection therewith including but not limited to attorney fees and court costs. Each of the foregoing warranties is a condition to Assignee funding the Contract.

The liability of Seller shall not be affected by any extension, renewal or other change in the manner, place or terms of payment thereof, or the release, settlement or compromise of or with any party liable for payment thereof, or the release or non-perfection of any security thereunder. Seller waives notice of acceptance of this Agreement and notices of nonpayment and nonperformance of the Contract and any other notices required by law.

The assignment of the Contract is and shall be without recourse against the Seller except as provided herein and in a separate Dealer Agreement, which is incorporated herein by reference and pursuant to such policies, procedures and requirements as issued by the Assignee from time to time.

POWER OF ATTORNEY: Seller hereby grants an irrevocable power of attorney to Assignee, and any corporate officer or employee designated by Assignee, as Seller's true and lawful attorney-in-fact, who is hereby authorized for Seller and in Seller's name to sign any documents reasonably necessary to register, perfect, transfer, or reassign Assignee's interest in the Home or in this Contract, or to insure, protect, sell or otherwise deal with the Home in the event of any default.

Seller: Cahaba Housing Center
By:
Title: President